HENRY PURCELL, Administrator of Estate of Z. W. Hunt, Deceased, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

Negligence of Engineer: *Verdict sustained.* In an action for the death of one killed by a train while walking on a railroad bridge, evidence held sufficient to warrant a finding that the engineer saw deceased in time to have stopped the train and avoid the accident.

*Duty to see and seeing.* In an action for the death of one killed by a train while walking on a railroad bridge, that the engineer ought to have seen deceased, but did not, did not amount to negligence.

ERRONEOUS SPECIAL FINDING OF NEGLIGENCE OF FIREMAN: *Held harmless error.* Plaintiff's intestate was walking on a railroad bridge, when he was struck by a train and killed, and in an action for the death there was nothing to show that the fireman was looking ahead previous to the collision, or that he had seen the deceased before he was struck. But the jury

found that the fireman knew that deceased "was on the bridge in time to give some warning and to have the engine stopped before injuring him." *Held*, that, as the jury had found the engineer negligent, a verdict for plaintiff would not be disturbed on appeal because of the finding as to the fireman.

*Same.* In an action for the death of one killed by a train while walking on a railroad bridge, if it were error to instruct as to whether the employees of the defendant were negligent in failing to give signals, the same was harmless; the jury having found the engineer negligent in not stopping the train.

*Appeal from Harrison District Court.*—HON. A. B. THORNALL, Judge.

THURSDAY, OCTOBER 23, 1902.

ACTION for damages, which resulted in judgment against defendant. It appeals.—*Affirmed.*

*Hubbard, Dawley & Wheeler* for appellant.

*S. H. Cochran* for appellee.

LADD, C. J.—The facts are substantially as related in the opinion on the former appeal, though the fireman did not testify, and the engineer was examined at greater length. See *Purcell v. Railway Co.*, 109 Iowa, 628. There was nothing to show that the fireman was looking ahead previous to the collision, or that he had seen the deceased before being struck, and the special finding that he knew "Hunt was on the bridge in time to give warning and have the engine stopped before injuring him" was without support in the evidence. As the finding was not essential to a verdict for plaintiff, however, a new trial will not be awarded on this ground alone. *Phœnix v. Lamb*, 29 Iowa, 352. The jury also found that the engineer saw Hunt on the bridge, or knew he was there in time to avoid injuring him. Appellant insists that this finding, also, is contrary to the evidence. The only testimony bearing thereon is

that of the engineer and Athy.  The bridge was on trestle-work, level with the ground, and without guards at the sides.  The train was coming from the east at a speed, according to the engineer, of 40 miles per hour.  When one-half or three-fourths of a mile from the bridge, he saw deceased approaching from the west, in the center of the track, and watched him till he stepped to the south side.  The engineer's attention was then taken by the semaphore at Missouri Valley, about one-half mile west of the west end of the bridge, and at the side of the track.  When on the south side of the track his view would be cut off by the engine 60 or 70 feet before reaching Hunt.  He testified: "All the time I saw him, until the front end of the engine cut my view off from him, he was walking toward me on the south side of the track.  I think he had not arrived at the bridge.  He might have been very close.  I did not begin to look at the semaphore until I saw this man clear—step off from—the track.  Q. If this man was on the bridge or trestle, he must have been between you and the semaphore, wasn't he, if he was there, whether you saw him or not?  A. He certainly was.  The trestle can't be seen until you get right onto it, simply because there are no marks,—nothing there; simply level ground."  The road was straight for a mile east of the bridge, and he could see to the west end till he reached it,—that is, where the bridge was,—though he could not distinguish it.  He further testified that he was near the east end when Hunt stepped aside.  "I could see clear on the track, and clear to the west end of the bridge, all the time.  *  *  *  Yes, sir; I could see the bridge.  I could see the space where the bridge was until the engine went onto it.  *  *  *  Q. Now, if he had been between you and the semaphore, as you looked at the semaphore wouldn't you necessarily have seen him on the bridge or trestle?  A. But I had my eyes on him first, and kept my eyes on him till I was sure he was out of the way.  *  *  *  I had not commenced to

look at the semaphore until I went onto the bridge."
From this the jury might have concluded that the engineer
saw deceased on the track at least a half mile before reach-
ing the bridge, that he watched him until beginning to
look at the semaphore, and that this was just as, or shortly
before, he went on the east end of the bridge. It will be
remembered that Athy testified that he saw the deceased
when struck, and that he was at that time within 15 or 20
feet of the east end of the bridge, and that the train
slowed down about half its speed within the last 120 yards
before reaching him. While the engineer insists that he
did not see deceased on the bridge, the situation was such
that the jury might have found otherwise. He was look-
ing all the time, with his view entirely unobstructed.
Even in noticing the semaphore, he could scarcely have
done so without observing anything on the track between.
Having looked, he may well be found to have seen such
intervening objects as persons ordinarily not only would
have seen, but would have experienced difficulty in avoid-
ing. See *Payne v. Railroad Co.*, 39 Iowa, 523. If the
conclusion be drawn, as it may, that his attention was not
taken by the semaphore until at the east end of the bridge,
he must have noticed Hunt walking thereon at least to the
center; and if it be conceded that the train was moving
at the rate of 40 miles per hour, and assumed that Hunt
was walking at the ordinary gait of 3 miles per hour, then
the engine was more than 700 feet from the east end of the
bridge when Hunt came upon the west end. If so, then
when he had walked 30 feet thereon the engine was more
than 350 feet away. This is in harmony with Athy's state-
ment that the train was 100 to 120 yards from the bridge
when he first saw deceased standing on the track, 15 or 20
feet from the east end. A witness who had had experience
as an engineer testified that such a train could be
brought to a standstill while moving 350 feet. This esti-
mate was doubtless accepted by the jury, though defend-

ant's witnesses fixed the distance at from 600 to 900 feet. There was evidence, then, from which the jury could have concluded that the engineer saw Hunt on the bridge, and in a place of peril, in time to have stopped the train and avoided the injury. Of course, it was not enough that he ought to have seen. It must appear that he actually saw or knew that he was in peril long enough before the engine reached him to have enabled the employe to stop it before striking deceased from the track. The engineer testified "that he did not know of a man being on a bridge that morning," but his statement is not to be regarded as conclusive, any more than the testimony of any other witness. If other evidence or circumstances warranted an inference to the contrary, the jury were at liberty to draw it. As said in *Southern Railroad Co. v. Bush*, 122 Ala. 470 (26 South. Rep. 168): "While wantonness on the part of the engineer cannot be predicated on the mere fact that he ought to have seen deceased on the trestle, or on anything short of actual knowledge, yet this actual knowledge need not be positively shown, but, like any other fact, may be proved by showing circumstances from which the fact of actual knowledge is a legitimate inference; otherwise, in cases of this character, this fact could never be proved except by the testimony of the engineer himself. The evidence was such that we cannot interfere with the finding in response to the special interrogatory, or the verdict returned."

II. Appellant takes exception to that part of the seventh instruction in which the question of whether the employes were negligent in failing to warn deceased by sounding the whistle or ringing the bell was submitted. If error in this were to be conceded, it could not aid appellant, as the jury specially found that the engineer was negligent in another respect; that is, in failing to stop the train as soon as he ought after seeing deceased in peril. Having found him negligent in one

respect, it is immaterial whether he was also negligent in the matter of giving warning, and hence the submission of that issue was without prejudice. The other point argued was disposed of on the former appeal.—AFFIRMED.