CHARLES A. GREGORY, Administrator, v. WABASH RAILROAD Co., Appellant.

Railroads: EVIDENCE: RATE OF SPEED. A witness familiar with the running of trains and shown to have a general knowledge of their rates of speed, may give an opinion as to the speed of a particular train which he has observed.

**Negligence:** QUESTION OF FACT. Where an engineer discovered a child of tender years upon the track, the question of whether his failure to sound the whistle was the exercise of a prudent judgment, was one of fact for the jury.

**Negligence:** INSTRUCTION. In determining the question of an engineer's negligence in failing to sound the whistle after discovering a child upon the track, an instruction that the jury might consider, among other things, whether an alarm would have frightened the child, and if so, whether the result would have been to cause it to remain on the track or move off, was properly given.

**Negligence:** FACT QUESTION. A railway company is not liable because of a failure of the engineer to sound the whistle when the accident would inevitably have happened, but the question of whether such signal would probably have avoided the accident is for the jury.

**Trespasser:** DISCOVERY OF PERIL: EVIDENCE. The testimony of enginemen as to when they first discovered the peril of a trespasser on the tracks is not conclusive on the subject, but all the circumstances bearing on the question are for the consideration of the jury.

**Evidence:** OBJECTIONS. An objection to questions in an action for negligence, that they call for evidence of distinct prior acts of negligence, cannot be urged for the first time on appeal.

**Misconduct:** ARGUMENT. Where misconduct in argument is not so flagrant that it could not have been prevented or its resulting prejudice removed by an instruction, the cause will not be reversed on appeal on account thereof, no objection thereto having been raised in the trial court.

**Evidence:** IMPEACHMENT. Where an engineer had testified that he did not sound the whistle, and denied on cross-examination that at a certain time and place and in the presence of certain persons he stated that he did give the signal, it was competent to show that he made the latter statement, not as an admission binding upon the company but for impeachment purposes.

**Negligence:** LIABILITY OF RAILWAY COMPANY. The liability of a railway company for the death of a trespasser upon its tracks, is not dependent upon the willful and wanton act of the trainmen, but a failure to exercise the highest possible degree of care to avoid the accident after the peril is discovered, will fix its liability.

**Evidence:** VALUE OF LIFE EXPECTANCY. Evidence in an action for the death of a girl two years old, that her parents were farmers and that the wages of female school teachers in that locality were from $30.00 to $35.00 per month, is held sufficient to take the case to the jury on the value of her life to her estate.

*Appeal from Appanoose District Court.*— HON. M. A. ROBERTS, Judge.

SATURDAY, DECEMBER 17, 1904.

ACTION to recover damages for the death of plaintiff's intestate, due, as alleged, to the negligence of defendant's employés in the operation of a train. Verdict for plaintiff for $1,210. From judgment on this verdict, defendant appeals.— *Affirmed.*

*Fee & Fee,* for appellant.

*C. F. Howell* and *W. R. C. Kendrick,* for appellee.

McCLAIN, J.— Plaintiff's intestate, a female child about two years of age, was killed by being run over by the engine of a passenger train on the defendant's track, at a place where there was no crossing or footway, either by law or custom; and the questions argued relate to the negligence of the engineer operating the engine, and the measure of damages in accordance with which recovery was allowed.

I. Several witnesses for plaintiff testify as to the speed of the train just before the accident, the question of speed being important in determining whether, after the child was seen by the engineer, he could by the exercise of reasonable prudence and diligence have stopped the train. The witnesses were shown to have traveled on trains and noticed their rates of speed, and it appears to us that they showed themselves to be competent to give an opinion as to the rate of speed at which the train was running. If such witnesses are not competent, then it would be almost impossible to secure any evidence with reference to the rate of speed of a train from other witnesses than the employés of the company

1. EVIDENCE: rate of speed.

operating such train.   One who is familiar with the running of trains, and who has general knowledge as to their rates of speed, may give an opinion as to the rate of speed of a particular train which he has observed.   *Pence v. Chicago, R. I. & P. R. Co.,* 79 Iowa, 389; *Van Horn v. Burlington, C. R. & N. R. Co.,* 59 Iowa, 33.

II.   Plaintiff was allowed to introduce evidence, over defendant's objection, tending to show that no signal or alarm was given by the blowing of a whistle after the engineer saw the child on the track and before

2. Negligence: question of fact.

the accident.   The argument for appellant on this point is that in the case of a child of such tender years the blowing of the whistle would not have served as a warning, but would have been quite as likely to stupefy the child with terror, and thus prevent its escape from the track, as to communicate to it a warning of danger of which it might take advantage for the purpose of escaping.   But it seems to us that the question whether, in the exercise of a prudent judgment, the engineer should have given an alarm signal, was one of fact for the jury. Evidence was introduced on each side bearing on this question, and the engineer, as a witness, excused himself for not giving the alarm signal by explaining that it might have had the opposite effect from that intended.   We cannot say as a matter of law that the sounding of the whistle would have increased the peril of the child, nor, on the other hand, that a child of such age, if its attention had been attracted by the signal, might not have got off the track and escaped danger.   If the latter result would have followed, either by reason of the natural instinct to avoid danger on being frightened, or by reason of the exercise of an intelligent judgment, and if the engineer, in the exercise of a prudent judgment, had reason to believe that in either of these ways danger to the child would have been lessened by giving the signal, it was his duty to do so, and it was

proper to leave the question of fact to the jury. It might well be that if the child was not in immediate danger, but was so near the track that if frightened it might put itself in peril, not being of sufficient years of discretion to exercise a prudent judgment, then there would be a good excuse for not giving the alarm signal. But we can hardly see how, in the case of a child actually on the track and unconscious of the approach of a train, any increase of danger would be involved in giving the alarm signal, while there would be some possibility, at least, that the effect of the alarm would be to cause the child to get out of danger by reason of the instinct of self-preservation, if not in the exercise of an intelligent judgment. The question was properly submitted to the jury as one of fact. *Masser v. Chicago, R. I. & P. R. Co.,* 68 Iowa, 602. And see, as having some bearing on the question, though not directly in point, *Graybill v. Chicago, M. & St. P. R. Co.,* 112 Iowa, 738; *McGill v. Minneapolis & St. L. R. Co.,* 113 Iowa, 358.

In this connection, we may notice a criticism of one instruction in which the court explained to the jury that in determining the question of the engineer's negligence they might take into consideration, among other things, "whether an alarm would have had the result to frighten the child, and if so, whether the result would have been to cause the child to remain on the track or to move off the track." It seems to us that this language suggests to the jury, the view which we have above expressed, and is not subject to criticism.

3. NEGLIGENCE: instruction.

It is also urged in this connection that the defendant was not liable on account of the failure to give the signal after the danger to the child became apparent to the engineer, if the accident would necessarily have happened even if the signal had been given. Of course, this is true, but we think it was properly left to the jury to say whether the accident would

4. NEGLIGENCE: fact question.

probably have been avoided if such signal had been given. In this respect the jury were fully and properly instructed.

III.  Counsel contend that in rulings on evidence, in instructions to the jury, and in overruling the motion for a new trial, the court failed to properly apply the rule, recognized in this State, that as to a trespasser upon its track the railroad company is under no duty to look out for his safety until his danger becomes known to those operating the train; in other words, that there is no duty to look out for trespassers, but only a duty on the part of the company's employés, after they are aware that a trespasser is in danger, to exercise proper care to avoid injury to him.  There is no controversy as to the correctness of this rule; but we have held that, in determining whether the employés of the company did see the trespasser in time to have avoided injury to him in the exercise of proper care, the plaintiff is not concluded by the testimony of the employés themselves as to when they did in fact become aware of the presence of the trespasser, but that all the circumstances bearing on that question are for the consideration of the jury.  *Farrell v. Chicago, R. I. & P. R. Co.*, 123 Iowa, 690; *Johnson v. Chicago, M. & St. P. R. Co.*, 122 Iowa, 556; *Purcell v. Chicago & N. W. R. Co.*, 117 Iowa, 667; *Barry v. Burlington R. & L. Co.*, 119 Iowa, 62. Therefore it was competent to show that the engineer's view of the track was unobstructed for a considerable distance as he approached the child, for this evidence, in connection with the evidence of the engineer that he was keeping a lookout, would bear on the question whether he did in fact see the child sooner than he testifies that he did see it.  In this connection, testimony that alarm signals were given before the time when, as the engineer testifies, he did actually see the child, these signals having apparent reference to no other danger or cause of alarm than the per-

5. TRESPASSER: discovery of peril; evidence.

ceived presence of the child on the track, was competent as tending in some measure to indicate that the engineer did observe something on the track before, as he testifies, the child was first seen.

IV.   Several objections are argued on the theory that the court allowed evidence to be introduced relating to prior fatal accidents caused by an engine in the charge of

6. Evidence: objections.

the engineer who was operating the engine which caused this accident.   As an abstract proposition, proof of such prior accidents would not be admissible, unless, perhaps, as supporting the claim that the company was negligent in employing this engineer in view of their knowledge of his negligence on previous occasions. But there is no such question in this case.   However, an investigation of the record shows that the objection made is not well founded.   The engineer, who was a witness for the defendant, testified as to the effect which the giving of an alarm signal might have had upon the child, and referred to previous accidents in his experience.   He was cross-examined with reference to these previous accidents, and led to disclose the fact that two men had at different times been run over and fatally injured by his engine while he was operating it.   Counsel for plaintiff made great point of this in the cross-examination and in the argument to the jury; but with reference to the cross-examination it is to be noticed that no objection to the questions were made on the ground that they called for evidence of a distinct prior act of negligence.   As this objection was not urged at the time, it cannot be urged now.

V.   Much is said in argument about misconduct of counsel for plaintiff, not only in referring to the two previous accidents while this engineer was operating his engine,

7. Misconduct: argument.

but also in explaining why not more than $2,000 was claimed in the original petition (the reason assigned being that the claim of a larger amount

would have enabled defendant to remove the case to the federal court), and in commenting on the amount recovered in another similar case.   The remarks of counsel were apparently unwarranted; but no objection was made at the time, nor afterwards in motion for a new trial, and counsel are in the position, therefore, of asking us to reverse this case on a ground not brought in any way to the attention of the trial court.   It must be borne in mind that in actions at law this court is a court for the correction of errors, and in general, in such cases, we can only review the action of the trial court as to objections which have been properly raised before it.   It is possible, of course, that misconduct may be so flagrant that no action of the court could cure the error, and possibly in such cases we ought not to require the complaining party to go through the formality of objecting to the argument and asking for a new trial.   Without passing, however, definitely on that question, we are satisfied in this case that the misconduct was not such that it could not have been prevented, or the resulting prejudice, if any, removed by a direction of the trial court to the jury; and under these circumstances we would not be justified in reversing on account of the misconduct alleged.   *Taylor v. Pacific Mut. L. Ins. Co.,* 110 Iowa, 621; *Mackerall v. Omaha & St. L. R. Co.,* 111 Iowa, 547; *Gorham v. Sioux City Stockyards Co.,* 118 Iowa, 749; *Pence v. Chicago, R. I. & P. R. Co.,* 79 Iowa, 389.

VI.   A witness was permitted, over defendant's objection, to testify to statements afterward made by the engineer with reference to whether or not he gave an alarm signal.

8. EVIDENCE: impeachment.   This testimony was not competent to show an admission binding on the defendant, but it was not introduced for that purpose.   The engineer, having testified that he gave no such signal, was asked on cross-examination whether he did not at a time and place specified, and in the presence of persons named,

say that he did give such signal; and, upon his denial, the testimony of the witness that such statement was made at the time and place described was admissible for purposes of impeachment, and it was plainly introduced for that purpose.

VII.   The court instructed the jury that it was not necessary, in order to entitle the plaintiff to recover, that they find that the injury was inflicted willfully or intentional-

9. NEGLIGENCE: liability of railway company.

ly by the engineer; and of this counsel for appellant complain, taking the position that where the injured person is a trespasser, and the liability of the company is only sought to be established on the ground that, after being aware of the danger to the trespasser, the employés of the company were at fault in not avoiding such danger, the action of such employés, in order to warrant recovery, must be willful and wanton.   It may be true that in some of the cases of this character this court has referred to the willful and wanton character of the acts of railroad employés in failing to take reasonable precautions to avoid injury after the trespasser was seen; but certainly this court has never announced the rule that under such circumstances the company will not be liable unless the conduct of its employés was intentional, willful, or wanton; and, so far as we can discover, the rule uniformly adhered to has been that if, after the employés in charge of the train become aware of danger to a trespasser on the track, they can, by the exercise of such care as a reasonably prudent person would exercise under the circumstances — that is, the highest possible degree of care in view of the fact that human life is involved — avert such danger, it is their duty to do so; and the company will be liable for their failure in this respect, which failure will be attributed to the company as negligence.   *Orr v. City Railway Company*, 94 Iowa, 423, 431; *Sutzin v. Chicago, M. & St. P. R. Co.*, 95 Iowa, 304; *Kelley v. Chicago, B. & Q. R. Co.*, 118 Iowa, 387; *Purcell v. Chi-*

*cago & N. W. R. Co.,* 109 Iowa, 628; *Walters v. Chicago, R. I. & P. R. Co.,* 41 Iowa, 71; *Burg v. Chicago, R. I. & P. R. Co.,* 90 Iowa, 106.

By answers to special interrogatories propounded at the request of the defendant, the jury exonerated the engineer from intentionally or willfully causing the death of the child; but these answers did not exonerate him from neglect. It is evident that the jury found that he was negligent, though not acting with any intention or desire to cause the child's death. The jury were correctly instructed on the subject of neglect, and there was evidence to support the verdict in this respect.

VIII. Finally, it is urged that there was no evidence as to the value of the life of intestate to her estate. Evidence was introduced, apparently without objection, that the wages of female school-teachers in the vicinity of intestate's home were from $30 to $35 a month; but there was no other evidence as to the value of the life of a female child two years of age; that is, what the earnings of such child would be from the time of majority to the limit of expectancy of life. The father of the deceased was a farmer, and the mother his housekeeper. The court instructed the jury that the evidence as to these matters was not admitted for the purpose of establishing a presumption that the child would have become a school-teacher, and directed them that the evidence could be considered as bearing on the position in society and the relative status of the family in which the child lived, and the opportunities afforded in that locality to young women to pursue an independent calling, and that it was for the jury to say, "from these facts and all the evidence bearing on this question, with the assistance of the knowledge and observation common to all alike, what, if any, independent calling or business deceased would have followed, and the amount of the estate, if any, she would have accumu-

10. EVIDENCE: value of life expectancy.

lated had she lived out her expectancy." That in such a case the jury are not to be limited to award nominal damages merely because it is impossible to prove what the occupation of the child would have been, and the compensation which would have been received in such calling, is well settled. *Walters v. Chicago, R. I. & P. R. Co.,* 41 Iowa, 71, 80; *Hively v. Webster County,* 117 Iowa, 672; *Eginoire v. Union County,* 112 Iowa, 558; *Farrell v. Chicago, R. I. & P. R. Co.,* 123 Iowa, 690.

If the court had been asked to direct the jury that in establishing the damages to the child's estate they should find the present worth of what the aggregate earnings of the child, from majority until the end of expectancy of life, less the ordinary expenses of living, would have been, no doubt some such instruction should have been given; but no instruction on this subject was asked, and we think that what the court said was not substantially nor prejudicially erroneous. *Andrews v. Chicago, M. & St. P. R. Co.,* 86 Iowa, 677, 685. In such cases, the best that can be done is to direct the jury as to the general basis on which the right to recover is founded, and allow them to fix such sum as is in their judgment reasonable. It is evident in this case that the jury did not allow the total amount of the earnings of a school-teacher at $30 a month, nor even the total net earnings at that rate for the period of expectancy of life after majority, which appeared from the Carlisle Life Tables introduced in evidence. No complaint is made that the verdict is excessive, and we are satisfied that the jury did not adopt any unreasonable basis for computation of the amount.

We have discussed the principal errors which are relied upon; others which are urged are so obviously without merit that we do not find it necessary to refer to them. A motion to strike appellee's amended abstract is submitted with the case, but on an examination of the record we think that it should be overruled.

The judgment of the trial court is *affirmed.*