[No. 6398. Decided November 9, 1906.]

SAMUEL STARK, *an Infant, by W. J. Stark, His Guardian Ad Litem, Respondent,* v. PORT BLAKELY MILL COMPANY, *Appellant.*[1]

REMOVAL OF CAUSES—ACTION FOR DAMAGES — JURISDICTION — AMOUNT CLAIMED. In an action for damages the amount claimed in the complaint is the value in dispute, for the purposes of removal to the United States court; and it is not an abuse of discretion to allow an amendment to bring the allegations within the amount claimed in the complaint.

MASTER AND SERVANT — NEGLIGENCE — SCOPE OF EMPLOYMENT — COUPLING CARS—EVIDENCE—SUFFICIENCY. There is sufficient evidence to make it a question for the jury whether a minor was to couple cars as a part of his duty, where it appears that his duties were to pull slack for the loaders and clean off the track, and had been told to "do anything that he saw to be done;" that he saw the cars needed coupling and previously coupled a car in the presence of the head loader.

SAME—DANGER OF COUPLING CARS—ASSUMPTION OF RISK. A boy seventeen years of age who was given no instructions as to the coupling of cars cannot be said to have assumed the risk of injury from having his hand caught, merely from the fact that he testified that he knew he would be injured if he held on to the link until the drawheads came together.

Appeal from a judgment of the superior court for Mason county, Linn, J., entered March 16, 1906, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by an employee in coupling cars. Affirmed.

*S. P. Richardson* and *Hastings & Stedman,* for appellant.

*Troy & Falknor* and *L. R. Byrne,* for respondent.

[1]Reported in 87 Pac. 339.

DUNBAR, J.—This action was commenced in the superior court of Mason county, by a minor seventeen years old, against the defendant, a citizen and resident of the state of California. The verdict of the jury was in favor of the plaintiff, the respondent here.

In the original complaint the respondent avers certain injuries amounting to $2,040.50, but prays for only $1,982. Within the time in which the appellant was entitled to plead, it filed its petition and bond for a removal to the United States circuit court. Thereupon the respondent moved to amend his complaint, bringing the allegations of the complaint within the demand, which motion to amend was allowed by the court, and this is the first error assigned by the appellant. The contention is that, the respondent having shown by his original complaint that his damages claimed amounted to more than $2,000, it was error of the superior court not to grant a removal to the Federal court. 1 Ency. Plead. & Prac., 712, is cited to the effect that, where the real amount in controversy is made to appear, it is the all-controlling criterion of jurisdiction; and many cases are cited to sustain the same doctrine. But an investigation of all of the authorities convinces us that a different rule applies in cases where the action is for damages.

"In all actions sounding in damages the plaintiff is limited by his demand therefor in his declaration or complaint, and can recover no more than the amount specified." 5 Ency. Plead. & Prac., 712.

"The rule then is settled that the demand of the plaintiff in his declarations, decides the sum in dispute." *Desbrow v. Griggs*, 16 How. Pr. 346.

"The value of the matter in dispute, for the purposes of removal, is to be determined by reference to the amount claimed in the declaration, petition or bill of complaint." Dillon, Removal of Causes, § 93.

See, also, *Barry v. Edmunds*, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; *De Camp v. Miller*, 44 N. J. L. 617. In any event, the application to amend was submitted to the discre-

tion of the trial court, and from the whole record in the case we are satisfied that the discretion was not abused.

At the time the respondent went to work for the mill company, he was instructed as to what his duties should consist of; that is to say, he was to pull the slack for the loaders, to clean bark and dirt off the track, and to stamp the logs. He worked in the performance of such duties until the day before his injury, which occurred when he was attempting to couple one logging truck to another, one of the logging trucks being stationary and the other being pushed up grade by one man at the time of the injury. The contention of the appellant is that the respondent had never been ordered to make couplings, and that, therefore, the appellant was not responsible for any injury that happened to him in the performance of the work which was unauthorized.

The testimony shows that, on the evening before the accident, Mr. Gill, the agent of the company, told respondent to "get in and do anything that he saw to be done," and that immediately he proceeded to do anything that he saw it was necessary to do in and about the work in which he was engaged; that when he saw the cars needed to be coupled, he coupled them; that he coupled one car that evening in the presence of Mr. Kempler, the head loader, and that the next morning when coupling another car, Mr. Kempler shoving the movable car, the accident occurred. There is some conflict in the testimony as to the latitude of the instruction given by Mr. Gill, but that was a question for the determination of the jury.

This whole case resolves itself into this proposition: Was the respondent instructed to couple the cars, or did he have a right to construe his instructions to include the coupling of cars? We think there was sufficient testimony on that subject to permit the jury to determine that the respondent was justified in concluding that he was authorized and instructed to couple cars, as well as to do anything else that was to be done around there. The car coupling was not ex-

cepted from the general direction. It is conceded that the boy was not instructed how to couple cars, or informed of the danger of coupling cars. It is contended by the appellant that the boy appreciated the danger, from the fact that he stated he knew that if he did hold on to the link until the drawheads came together his hand was bound to be crushed. Of course he did understand that, but equally of course he did not intend to hold on to the link until the drawheads came together and crushed his hand. His testimony was that, in noticing the danger to his legs, he turned around to protect them, and that, inadvertently of course, he left his hands in the dangerous place too long. Every man of common intelligence knows that if his hand comes in contact with a running saw, or his head with a descending pile-driver, or any part of his body with any dangerous piece of machinery in motion, he will be injured. If the simple fact that he knew that if there was a contact between his person and the dangerous machinery, injury would result to him, would preclude him from recovering, no man could ever recover, no matter what the negligence of the employer was in not furnishing him a safe place, or not informing him of the perils incident to his particular employment.

Many objections are made to the instructions in this case, but they involve questions that have been determined over and over by this court, and it would be unprofitable to again enter into a discussion of them. The instructions it seems to us were all fair and stated the law, and were as favorable to the appellant as instructions could possibly be and keep within the law.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, and RUDKIN, JJ., concur.

ROOT, J., dissents.