L. M. BACON, Administrator, Appellee, v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

**Removal of causes:** AMOUNT IN CONTROVERSY: HOW DETERMINED. The
I   amount involved in an action for damages, for the purpose of
removal from the state to a federal court, is governed by the

amount for which judgment is prayed, rather than by an allegation in the petition that plaintiff's damage was a larger sum.

**Same:** JURISDICTION OF FEDERAL COURT: DISMISSAL OF ACTION: EFFECT. Where the amount in controversy is less than $2,000, as appears from the pleadings, the cause is not removable from the state to the federal court. And where the defendant filed with the clerk a petition and bond for removal, based on the amount in controversy, which appeared from the pleadings to be less than $2,000, and without directing the attention of the court thereto caused the transcript to be filed in the federal court, and that court merely continued the case and finally dismissed it, without determining its jurisdiction or passing upon the merits, the dismissal was not a bar to further prosecution in the state court.

**Same.** The mere filing of a petition and bond for the removal of a cause to the federal court does not deprive the state court of jurisdiction, unless the record shows on its face that the petitioner can remove the cause as a matter right under the statute; and where this does not appear from the entire record, it is not only the right of the state court, but its duty, to proceed and determine the issues in the ordinary course of litigation.

**Negligence:** PLEADINGS: LIMITATIONS. Although the petition in an action for negligence failed to allege freedom from contributory negligence until the filing of an amendment more than two years later, still the action was not for that reason barred.

**Same:** LAST CLEAR CHANCE. Under the evidence in this action the questions of whether the enginemen discovered decedent's peril, as he was about to pass over a crossing, and whether by the exercise of reasonable care they might have stopped the train and avoided the accident, were for the jury.

*Appeal from Mahaska District Court.*—Hon. John F. Talbott, Judge.

Tuesday, October 22, 1912.

Action for damages resulted in judgment against the defendant, from which it appeals.—*Affirmed.*

*George W. Seevers* and *W. H. Bremner,* and *John O. Malcolm,* for appellant.

*John McCoy, L. T. Shangle, J. B. Bolton,* and *D. C. Waggoner,* for appellee.

LADD, J.—This action was begun September 20, 1905, by the service of an original notice, in which the claim was said to be $10,000. In the petition, filed two days later, plaintiff alleged that "the defendant's employees negligently and carelessly permitted the said Martin W. Lockhart to be killed, to the plaintiff's damage in the sum of $10,000," but demanded judgment for $1,990 only. The defendant filed an answer on September 30, 1905, admitting its corporate existence, and that the plaintiff's intestate was blind, and denying all other allegations of the petition. It filed a petition for removal to the Circuit Court of the United States, February 2d following, therein averring diverse citizenship, and that the amount in controversy, exclusive of all interest and costs, exceeded $2,000, and also a bond approved by the clerk of the district court of Mahaska county. This petition was not presented to the district court, nor, so far as appears, was its attention directed thereto prior to October 6, 1910. Notwithstanding this, the clerk of the district court made out and certified a transcript of the papers on file and proceedings, which was filed in the Circuit Court of the United States, March 29, 1906. The record does not indicate that plaintiff ever appeared in that court, but several orders continuing the cause were entered of record, and on December 5, 1908, an order "that unless same be noticed for trial at the next term of this court, or good reason shown for not so doing, the same shall be dismissed for want of prosecution." At the May, 1909, term of that court, the cause was so dismissed at plaintiff's costs. In the meantime the case had not been placed on the printed docket of the district court of Mahaska county, but after the dismissal in the federal court, and on September 19, 1910, an amended and substituted petition was filed, in which the judgment prayed

was the same as in the original petition, and on October 6th following the petition for removal was overruled. Nine days later the defendant filed an answer thereto, denying the allegations of the amended and substituted petition, and pleading contributory negligence and the statute of limitations. Later a second amended and substituted petition, with prayer as before stated, was filed, and defendant moved that the cause of action be dismissed, and the two petitions last filed by plaintiff stricken from the files, on the ground that said cause had been transferred to the federal court, and there dismissed. This motion was overruled, and trial thereafter was had on the merits.

I.   The point first made. is that the amount in controversy exceeded $2,000, and for this reason the court erred in overruling the petition for removal to the federal court. While conceding that the prayer was for a judgment of less than $2,000, it is argued that, inasmuch as the petition alleged the damages to be $10,000, it, rather than the prayer, should control, relying on section 3775 of the Code, which declares that "the relief granted to plaintiff if there be no answer, can not exceed that which he has demanded in his petition; in any other case the court may grant him any relief consistent with the case made by the petition and embraced within the issues." It may be conceded that there are authorities which seem to hold that, under like statute, the prayer for relief becomes wholly immaterial after an answer has been filed. See *Marquat v. Marquat,* 12 N. Y. 336; 1 Bates' Pleading, etc., 315. An examination of these cases, however, discloses that the reasoning in each is broader than the decision. Thus in *Marquat v. Marquat* the action was for the specific performance of an agreement to execute a mortgage to secure a note, and for other relief. The defendants answered, denying any agreement to execute a mortgage, but alleging that the plaintiff merely loaned them money.

1. REMOVAL OF CAUSES: amount in controversy: how determined.

The court denied specific performance, but entered judgment for the amount due on the note.   Other decisions are to the effect that the prayer for relief forms no part of the petition, and hence that its sufficiency and character must be determined from the facts stated rather than from the prayer for relief.   *Henry v. McKittrick,* 42 Kan. 485 (22 Pac. 576); *Tiffin Glass Co. v. Stoehr,* 54 Ohio St. 157 (43 N. E. 279).   In actions like this, the damages are unliquidated, and a prayer for judgment in a sum less than the damages alleged is equivalent to a remittance or waiver of the difference.   Dillon in his work on Removal of Causes, section 93, says:   "The value of the matter in dispute, for the purpose of removal, is to be determined by reference to the amount claimed in the declaration, petition, or bill of complaint."   Of course this will not control when the allegations of the petition disclose the amount in controversy to be less than that for which judgment is prayed. 1 Ency. Pl. & Pr. 712; *Gorman v. Havird,* 141 U. S. 206 (11 Sup. Ct. 943, 35 L. Ed. 717).   And the sum for which judgment is prayed is determinative of the amount in controversy with reference to the right of appeal.   *Hiatt v. Nelson,* 100 Iowa, 750; *Nash v. Beckman,* 86 Iowa, 249; *Cooper v. Dillon,* 56 Iowa, 367.   "In all actions sounding in damages the plaintiff is limited to his demand therefor in his declaration or complaint, and can recover no more than the amount specified."   5 Ency. Pl. & Pr. 712.

Our statute requires the petition to contain "a demand of· the relief to which the plaintiff considers himself entitled, and if for money, the amount thereof;" and the rule prevails in this state under the statute first quoted that the court may not grant relief other than that prayed, unless included herein, or enter judgment or decree different from, unless equivalent to, that demanded.   *Bottorff v. Lewis,* 121 Iowa, 27; *Browne v. Kiel,* 117 Iowa, 316; *Rees v. Shepherdson,* 95 Iowa, 431; *Marder v. Wright,* 70 Iowa, 42; *Tice v. Derby,* 59 Iowa, 312; *Lafever v.*

*Stone,* 55 Iowa, 49; *O'Connell v. Cotter,* 44 Iowa, 48. See, also, *Winney v. Sandwich Mfg. Co.,* 86 Iowa, 608; *Johnson v. Rider,* 84 Iowa, 50; *Humphreys v. Daggs,* 1 G. Greene, 435. Following these decisions, we necessarily reach the conclusion that the amount in controversy was less than $2,000, the amount for which judgment was prayed, notwithstanding the allegation in the petition that the plaintiff had been damaged more than that sum. As precisely in point, see *Stark v. Port Blakely Milling Co.,* 44 Wash. 309 (87 Pac. 339); *Smith v. Railway Co.,* 3 N. D. 17 (53 N. W. 173); *Lake Erie & W. Ry. Co. v. Juday,* 19 Ind. App. 436 (49 N. E. 843).

II. The amount in controversy then affirmatively appeared from the pleadings on file to be less than $2,000,

2. Same: jurisdiction of federal court: dismissal of action: effect.

though the petition for removal asserted it to exceed that sum, and under the act of Congress approved March 3, 1875, as amended by the acts of Congress approved March 3, 1887, and August 13, 1888, the cause was not removable. Section 3 of the act referred to provides:

That whenever any party entitled to remove any suit mentioned in the next preceding section, except in such cases as are provided for in the last clause of said section, may desire to remove such suit from the state court to the Circuit Court of the United States, he may make and file a petition in such suit in such state court . . . for a removal of such suit into the circuit court to be held in the district where such suit is pending, and shall make and file therewith a bond with good and sufficient surety. . . . It shall then be the duty of the said court to accept such petition and bond and proceed no further in such suit; and the said copy being entered as aforesaid in said Circuit Court of the United States, the case shall then proceed in the same manner as if it had been originally commenced in said circuit court.

The defendant filed a petition for removal, accompanied by a bond with the clerk of the district court, but

does not appear to have directed the court's attention thereto, nor to have afforded it an opportunity to "accept" the petition. It caused transcript of the record to be filed in the federal court, which, however, never ruled on the question of whether it acquired jurisdiction. It merely entered orders continuing the case, and finally dismissed the same without ruling thereon, or on the merits. Continuance orders were not inconsistent with want of jurisdiction, for this simply postponed action of any kind touching the disposition of the case. Nor was the dismissal a bar to the prosecution of another action. *Gardner v. Michigan Cent. R. Co.,* 150 U. S. 349 (14 Sup. Ct. 140, 37 L. Ed. 1107). It is not important, then, to consider the effect to be given to a judgment on its merits rendered in a federal court in a case not removable thereto; but see *Des Moines Navigation Co. v. Homestead,* 123 U. S. 552, 559 (8 Sup. Ct. 217, 31 L. Ed. 202), and *Chesapeake & O. Ry. Co. v. McCabe,* 213 U. S. 207 (29 Sup. Ct. 430, 53 L. Ed. 765), holding that such a judgment, if unreversed, will support a plea in bar. There was no adjudication of the right of removal by the United States Circuit Court, and, unless the cause was removable, the district court of Mahaska county was not required to yield jurisdiction upon the filing of the petition for removal.

Of course, the record as made by the filing of such petition can not be questioned in the state court, but if, as thus made, it appears upon its face that the cause was not removable, it was not only the privilege, but the duty, of the state court to retain jurisdiction, and to adjudicate the issues raised by the pleadings. In other words, the petition for removal, with the record as it appeared upon the filing thereof, presented a pure question of law as to whether removal had thereby been effected. In *Burlington, Cedar Rapids & Northern R. Co. v. Dunn,* 122 U. S. 513 (7 Sup. Ct. 1262, 30 L. Ed. 1159), Chief Justice White, speaking for the court,

3. SAME.

observed that "the theory on which it rests is that the record closes, so far as the question of removal is concerned, when the petition for removal is filed and the necessary security furnished. It presents, then, to the state court a pure question of law, and that is whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the ·pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit. That question the state court has the right to decide for itself; and if it errs in keeping the case, and the highest court of the state affirms its decision, this court has jurisdiction to correct the error, considering for that purpose only the part of the record which ends with the petition for removal." That court has repeatedly recognized the principle above stated; i. e., that the state court is not required to let go its jurisdiction until a case is made which upon its face shows that the petitioner can remove the cause as a matter of right. *Pennsylvania Co. v. Bender,* 148 U. S. 255 (13 Sup. Ct. 591, 37 L. Ed. 441); *Meyer v. Delaware R. Const. Co.,* 100 U. S. 457, 474 (25 L. Ed. 593, 599); *Powers v. Chesapeake & O. R. Co.,* 169 U. S. 92 (18 Sup. Ct. 264, 42 L. Ed. 673); *Stone v. South Carolina,* 117 U. S. 430 (6 Sup. Ct. 799 (29 L. Ed. 962); *Yulee v. Vose,* 99 U. S. 545 (25 L. Ed. 356). See *Nat. Docks & N. J. Junct. Connect. Ry. Co. v. Pa. R. Co.,* 52 N. J. Eq. 58 (28 Atl. 71). The rule is well stated in *Gregory v. Hartley,* 113 U. S. 745 (5 Sup. Ct. 745, 28 L. Ed. 1150): "The district court was not bound to surrender its jurisdiction until a case was made, which on the face of the record showed that the petitioners were in law entitled to a removal. The mere filing of a petition was not enough, unless, when taken with the rest of the record, it showed on its face that the petitioners had under the statute a right to take the case to another tribunal."

So that, notwithstanding the assertion in the petition

for removal that the amount in controversy exceeded $2,000, this was clearly shown by the record to be incorrect and the district court was not deprived of jurisdiction by the attempt to take the case to the federal court. Though the case had not been placed on the printed docket after the filing of the transcript in the federal court until the entry of dismissal there, it had not been dismissed in the state court. Nor does its omission from the docket appear to have been in pursuance of any order of the latter tribunal. It was still pending, notwithstanding the omission of the clerk, and upon the filing of the amended and substituted petition the court overruled the petition for removal. This asserted its jurisdiction at a time when first presented for its acceptance, and of which nothing had been done to deprive it. Manifestly the court retained jurisdiction of the cause, and there was no error in proceeding to determine the issues in the ordinary course of litigation.

The petition as first filed did not allege freedom from contributory negligence. It was amended in this respect more than two years afterwards, and appellant contends that the plea of the statute of limitations should have been sustained. *Cahill v. Railway,* 137 Iowa, 577, decides otherwise, and the question is so fully discussed there that nothing need be added.

4. NEGLIGENCE: pleadings: limitations.

IV. The issue of whether decedent was guilty of contributory negligence was withdrawn from the jury, and appellant contends that the evidence was not such as to justify the submission of the cause under the doctrine of the last fair chance. It appears that decedent stood near the crossing when the switch engine moved over the street to the south, where it coupled onto a car and immediately backed over the crossing, running decedent down. The engineer and fireman testify that each had his head out of the cab looking north as the engine backed with the tender ahead. Other evidence located dece-

5. SAME: last clear chance.

dent, whose vision was impaired, where the fireman, at least, if he looked as he testified, must have seen him feeling his way across the track with his cane in time to have avoided the collision. Added to this, the jury might have found that in backing no signal was sounded. Whether the fireman so saw decedent, notwithstanding his denial, was an issue for the jury. *Purcell v. Railway,* 117 Iowa, 667; *Farrell v. Railway,* 123 Iowa, 690; *Gregory v. Railway,* 126 Iowa, 230. And, if he saw him, the jury might well have concluded that he should have appreciated the peril of his situation in time to have avoided a collision.

Discovering no error in the record, the judgment is —*Affirmed.*