Laurence James, Administrator, Appellant, v. Iowa Central Railway Company et al., Appellees.

NEGLIGENCE: Contributory Negligence—Avoidance—"Last Clear Chance"—Pedestrian on Railway Track. Two persons may be so contemporaneously negligent that, if such negligence continues unbroken, no recovery may be had for a resulting injury to one of the parties; but if one of the parties actually discovers the other party in his position of reasonably manifest danger, at a time when the one discovering can avoid the injury by the exercise of reasonable care, such discovery presents to the one, discovering it the last clear opportunity to avoid the injury; and if he does not, from the time of such discovery, exercise such reasonable care, and thereby avoid such injury, he is guilty of a *new, independent,* and *proximate* negligence—a negligence which neutralizes the former or continuing negligence of the one injured.

PRINCIPLE APPLIED:  In a populous city, deceased, 42 years old, and wholly deaf, entered upon and walked down the center of a railway track.  Thereafter, she looked neither to the right nor to the left nor to the rear.  A passenger train, 350 feet long, consisting of engine and four cars, and running in the same direction as deceased was walking, came into unobstructed view of deceased for a distance of some seven blocks.  The engineer and fireman were both looking forward, and out of the engine windows.  The fireman saw deceased for a distance of over four blocks.  The jury might have found that the engineer saw deceased about the same time.  When some 700 feet from deceased, the fireman said to the engineer, "I don't believe she is going to get off."  The engineer did not reply; but, long before deceased was hit, the warning whistle was repeatedly sounded, and the bell rung continuously, to all of which deceased paid no attention.  The "service" brake was applied when the train was several hundred feet from deceased, but the "emergency" was applied only when the train was some three or four rail lengths from deceased.  The train could have been stopped in less than 350 feet,—at least the jury might have so found.

*Held*, the doctrine of the last clear chance should have been submitted to the jury.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

JANUARY 10, 1918.

REHEARING DENIED APRIL 1, 1918.

ACTION for damages resulted in a directed verdict for defendant, and judgment thereon.  The plaintiff appeals. —*Reversed.*

*E. N. Farber, H. C. Lounsberry,* and *Rickel & Dennis,* for appellant.

*C. H. E. Boardman, W. H. Bremner,* and *F. W. Miner,* for appellees.

LADD, J.—The only question submitted is whether the cause should have been submitted to the jury, on the theory that, notwithstanding decedent's negligence, defendant's em-

ployees discovered her perilous situation in time for them, in the exercise of ordinary care, to have avoided the collision. She was a woman of 42 years, wholly deaf, and was struck by a train on defendants' main track between Fourth and Fifth Streets in the city of Marshalltown. This track ran northwesterly from defendants' station. The train, consisting of engine, three passenger coaches, and baggage car, came in at about 9 o'clock in the morning of June 17, 1910, at a speed of 20 to 25 miles per hour, when it reached Tenth Street, and slowed down to 18 or 20 miles an hour by the time it reached Sixth Street, but continued moving at that rate until immediately before the collision, when the emergency brake was thrown on. The decedent had gone on the track at Fifth Street, and was walking between the rails, in a southeasterly direction. When struck, she was 275 feet beyond Fifth Street. The distance from Sixth to Fifth Street was 442 feet. After the train left the curve at Twelfth Street, there was a clear view of the track all the way, and the fireman testified that he saw her when the engine was between Tenth and Ninth Streets, and, at about the same time, the engineer caused the engine to whistle "for the Sixth Street crossing, and sounded the danger alarm,—whistled for danger."

"Q. About where was the engine when the engineer first sounded the danger whistle? A. Well, it was northwest of Sixth Street. * * * Q. From there on down until the lady was struck by the engine, tell the jury whether the whistle was continuously sounded by the engineer. A. Well, he blowed the whistle at different times, trying to call her attention, like anybody would. Of course he did not pull the whistle open and keep it continuously blowing; the danger sound is short blasts of the whistle. Q. Were these blasts of the whistle short? A. Short and long, and in every way possible to alarm anybody that was on the track."

The bell was rung by the fireman all the time from Twelfth Street until the collision. The witness testified further that decedent gave no heed to the warning, but "walked straight ahead in the middle of the track, and never looked to the right or left;" that he kept his eyes on her, and, when northwest of the Sixth Street crossing, said to the engineer, "George, I don't believe she is going to get off the track;" that the engineer made no response; that the train was about 350 feet long, and ran about two train lengths to the point where decedent was hit. The engineer made the service application before reaching Sixth Street, and, as the witness first testified, applied the emergency three or four rails long before reaching decedent. It seems service application runs down the air pressure, and makes the application less effective on emergency.

The engineer did not apply the emergency brake when the fireman told him that the woman was not going to get off the track. The latter testified that this happened "just before he struck the lady." The engineer was looking out of his window all the time. Other witnesses gave testimony corroborating the above. We have assumed the facts to be as some of the evidence tended to prove, but without intending to intimate that they should be so found. This is done in pursuance of the rule that, when the propriety of directing a verdict is challenged, the evidence shall be considered in a light most favorable to the party asserting error in the ruling. It may be conceded, as it must be, that decedent was negligent in walking along the track, and in so continuing until she was struck. This, however, did not excuse defendant in running her down, if her position of peril was discovered, and her obliviousness to the approach of a train was appreciated in time so that defendants' employees might, in the exercise of ordinary care and vigilance, have stopped the train before the engine struck her. That such is the law appears from *Bruggeman v. Illinois Cent. R.*

*Co.*, 147 Iowa 187; *Lundien v. Fort Dodge & S. R. Co.*, 166 Iowa 85; *Kelly v. Chicago, B. & Q. R. Co.*, 118 Iowa 387; *Tarashonsky v. Illinois Cent. R. Co.*, 139 Iowa 709.

Said employees had the right to assume that decedent would leave the track, up to the time when it became apparent to them, as ordinarily cautious and prudent men, that for some reason she was not likely to do so. This might have been found to have happened when or before Sixth Street was reached. The fireman so said to the engineer when or before Sixth Street was reached; and, though the latter would not necessarily be bound by what the fireman said, it brought the situation to the engineer's attention. Indeed, the jury might have inferred, from the signals given, and the evidence that the engineer was looking out of his cab, with an unobstructed view, that he saw decedent as soon as the fireman did, and therefore observed decedent's conduct from Ninth Street on. *Purcell v. Chicago & N. W. R. Co.*, 117 Iowa 667; *Bacon v. Iowa Cent. R. Co.*, 157 Iowa 493.

With danger signals sounding, as was testified to by several witnesses, together with the ordinary noise of a train approaching so near, a normal person would not be likely to give no heed to the danger of her situation; and surely, the issue of whether defendants' employees, as ordinarily careful men, did or should have discovered this, and so have acted as not to have run her down, was for the jury. According to the fireman, the train was stopped, after moving about twice the train's length, or 700 feet.

Another witness testified that the train *stopped*, but did not run its length after the collision before being stopped. From this evidence, the jury might have found that, had the engineer undertaken so to do upon discovering decedent's peril, he could have brought the train to a stop before injuring her. The law is well settled, the only doubt being as to whether a case was made out by the evidence.

The suggestion that this case necessarily is one of concurrent negligence is disposed of by *Bruggeman v. Illinois Cent. R. Co.,* supra. The jury could not well have found otherwise than that decedent was oblivious of her peril. If defendants did discover her peril, as the jury might have found, then, notwithstanding her negligence in being where she was, the defendants' employees were bound to do whatever ordinary prudence and care exacted, to avoid injuring her. It will not do to say that the assumption that an adult will leave the track before the train reaches him may be carried beyond the point where a person of ordinary prudence would infer from appearances the contrary; and from that moment, those in charge of the train are required to exert all reasonable effort to avoid a collision. The decisions cited dispose of every issue presented. The cause should have gone to the jury.—*Reversed.*

PRESTON, C. J., EVANS, GAYNOR, and SALINGER, JJ., concur.