FLEMING et al. v. PERKINS et ux.

No. 33431. Nov. 22, 1949.

*212 P. 2d 122.*

James E. Grigsby and Robert E. Lee, both of Oklahoma City, for plaintiffs in error.

Claude Hendon and Scott Hendon, both of Shawnee, for defendants in error.

O'NEAL, J. This is an appeal from a judgment in favor of defendants in error, herein referred to as plaintiffs, against plaintiffs in error, herein referred to as defendants, for damages alleged to have been caused by the overflow of plaintiffs' land by the alleged wrongful acts of defendants.

On October 5, 1948, after the appeal to this court was perfected, the cause was dismissed as to Joseph B. Fleming and Aaron Colnon, Trustees of the Chicago, Rock Island & Pacific Railway Company, a corporation, and the Chicago, Rock Island & Pacific Railway Company, a corporation, and Chicago, Rock Island & Pacific Railroad Company, a corporation, was substituted as plaintiff in error and the judgment rendered in the district court of Pottawatomie county was made to run against Chicago, Rock Island & Pacific Railroad Company, a corporation.

Plaintiffs are the owners of the west half of the northwest quarter, section ten, township ten, range three east, less five acres in the northeast corner thereof.

Defendants own and operate a railroad running across plaintiffs' land, generally in an easterly and westerly direction, but somewhat to the southeast and northwest, about midway north and south on plaintiffs' land.

Approximately 23 acres, mostly in the south half of plaintiffs' land, is second bottom land in the Canadian River Valley, and the railroad track runs across this part of plaintiffs' land.

Plaintiffs commenced this action on September 1, 1945. In their petition plaintiffs allege that the water from

plaintiffs' land and other land to the north of the railroad right of way has always drained toward the south and passed under the roadbed of defendants in a natural watercourse, or drain, over which the plaintiffs have maintained a bridge, and the flood waters, in the years gone by, ordinarily traveled in a southeasterly direction along the roadbed in a drain or ditch; that defendants, within two years next before the commencement of this action, permitted the ditch along the right of way to become filled up with sand and dirt and have erected an embankment or levee on the east side of the drain or watercourse across and under defendants' track and on the south side of its roadbed, and thus have forced all waters passing from the north to the south in said watercourse upon the lands of plaintiffs lying to the south of the roadbed, and the defendants have also permitted said dirt and debris to fill up and obstruct the natural watercourse over which defendants maintain their roadbed, to such an extent that the waters to the north of plaintiffs' land would not flow quickly or freely to the watercourse; that defendants have so obstructed and diverted the natural flow of the flood and surface water that, within the said two years, nearly every time it rained large quantities of water have backed up on plaintiffs' land, covering the crops growing thereon, injuring and damaging plaintiffs' land with large amounts of sand, and destroying plaintiffs' crops growing on said land and permanently injuring both lands and crops, "all of which happened within two years next preceding the filing of this action." That said acts of defendants were wrongful, negligent and careless, and were the proximate cause of the injuries and damages sustained by plaintiffs to their lands and crops; that as a result thereof, in 1944, plaintiffs lost eleven acres of growing corn on the north side of the railroad track of the reasonable value of $450, and to plaintiffs' damage in the said sum, and in 1945 plaintiffs lost eleven acres of wheat on the north side of said railroad right of way of the value of $250, and to plaintiffs' damage in said sum; that in addition thereto, in 1944 and 1945, plaintiffs lost two crops on two acres of land south of the railroad right of way (one crop of oats and one crop of corn) of the value of $150, to plaintiffs' damage in said sum; that plaintiffs lost the use of said 13 acres of land and the rental value thereof for the years 1944 and 1945, and said 13 acres of land have been covered by sand and deposits of worthless soil impregnated with obnoxious and deleterious plants, known as Johnson grass, and the value of plaintiffs' land has diminished and lessened thereby in the sum of $2,000, so that plaintiffs, in addition to damage to and loss of crops and rental value of said lands, have suffered further damage in the sum of $2,000, and:

"Plaintiffs say that they have lost and will continue to lose pecan crops from the pecan trees on their lands because the said pecans fall at a time of year and at a place where the lands of plaintiff are flooded by waters as a result of the diverted and obstruction of the natural water course by the defendants and plaintiffs have been and will be unable to gather said pecans as long as the unlawful diverted and obstruction of the surface waters and natural water course hereinbefore described by the defendants continue, and as a result thereof plaintiffs have and will sustain further damages in the sum of $1,000."

The prayer is as follows:

"Wherefore, premises considered, plaintiffs pray judgment from and against the defendants in the sum of $3,000 and all costs."

Defendants were duly served with summons and, thereafter, and before the answer day fixed in the summons, defendants filed their notice and petition for removal to the United States District Court for the Western District of Oklahoma and their bond for removal, which bond was approved by the Court Clerk.

Defendants' petition for removal alleged that plaintiffs commenced their

action against defendants, alleging that they had been damaged in the sum of $3,850 by reason of certain alleged acts of negligence on the part of defendants. The petition for removal contained the usual allegation as to diversity of citizenship, etc., and then alleged:

"Your petitioners further represent and show to this Honorable Court that this is a suit of civil nature and that the amount in controversy in said action exceeds the sum and amount of Three Thousand ($3,000) Dollars, exclusive of interest and costs, and the real controversy herein is between citizens of different states."

No mention was made of the prayer for damages in the sum of $3,000. The petition for removal was presented to the district court of Pottawatomie county on September 22, 1945. Before any order was made in the matter, plaintiffs asked and obtained leave to amend their petition by interlineation by adding the following:

"Plaintiffs remit all damages in excess of $3,000 and all claim therefor."

Thereafter, on the same day, the court entered its order denying the petition for removal and defendants saved their exceptions. Thereafter, defendants filed their answer, consisting of a general denial, and admitting that they maintain and operate a line of railroad across the land described in plaintiffs' petition. The answer then alleges that said railroad line was constructed across said land in 1892, and that the bridge referred to in plaintiffs' petition was built over the natural watercourse which drains said land and the adjacent country; denies that defendants have allowed the opening under said bridge to become filled with dirt or debris or that they allowed the ditch along the right of way to become filled with sand and dirt, or that they erected an embankment or levee on the east side of said watercourse which impeded the flow of water in the said natural watercourse. The answer then alleged, in substance, that if any of said land was flooded by water it was caused by plaintiffs themselves by reason of plaintiffs' maintaining a dike on the west side of said watercourse and immediately north of defendants' bridge, which prevented, and does prevent, the natural drainage of surface water from the plaintiffs' land into said watercourse.

The answer then alleges:

". . . that said natural water course referred to in plaintiffs' petition flows along the east side of plaintiffs' land described in said petition and in a southerly direction under defendants' bridge, and is wont to follow the natural contour of said area and flow in a southeasterly direction and discharge into a lake approximately 300 feet southeast of defendants' bridge, which lake is located off of the right of way of said defendants, and defendants state that the owners of the land lying south and east of defendants' bridge have filled up said natural water course, or ditch, south and east of said bridge and off of the right of way of said defendants, and so obstructed the natural flow of said water in said water course so as to prevent the same from following the natural contour of said land, and this cause (sic) said water in said water course to back up and discharge silt and sand under the opening of defendants' bridge . . . Defendants further state that the direct and proximate cause of any overflow or prevention of natural drainage is the obstruction of the natural flow of said water course by the plaintiffs or by the owners of the land lying south and east of defendants' bridge and is not caused by any fault or negligence of these defendants."

The answer then alleges, in substance, that theretofore, and on May 11, 1942, plaintiffs filed an action in the district court of Pottawatomie county, Oklahoma, case No. 19012, against these defendants, alleging that by reason of the acts of negligence of defendants in obstructing the natural flow of water in said watercourse over the land described in the petition herein, they lost crops for the years 1941 and 1942, and that eight acres of said land were rendered valueless by reason of

the overflow due to the negligence of defendants. (A copy of the petition in said cause No. 19012, marked "Exhibit A", was attached to the answer and made a part thereof.) That defendants filed their answer in said cause No. 19012 denying the negligence. (Copy of the answer in said cause, marked "Exhibit B", is attached to and made a part of the answer herein.) That the issues joined in said cause No. 19012 were tried to a jury in said district court on September 23 and 24, 1942, resulting in a verdict and judgment for defendants. (A copy of said judgment, marked "Exhibit C", is attached to and made a part of the answer herein.) The answer then states:

"Defendants therefore state that said judgment rendered in said case is final and conclusive upon the plaintiffs herein and can not now be litigated in this action either as to crop damages or permanent injury to said land for the years 1944 and 1945, or as to permanent injury to said land, and defendants assert that the plaintiffs are stopped (sic) by said judgment of September 24, 1942, from relitigating the permanent injury to said lands."

Plaintiffs moved to strike all the allegations in the answer relating to cause No. 19012 in the district court of Pottawatomie county and Exhibits A, B, and C. The motion to strike was sustained.

Thereafter, on February 26, 1946, defendants filed a motion to set aside the order sustaining the motion to strike. On April 15, 1946, defendants filed their written withdrawal of their motion to set aside the order sustaining the motion to strike. Plaintiffs then filed their reply, denying all allegations of new matter contained in the answer.

The issues thus joined were tried to the court and jury, resulting in a verdict and judgment for plaintiffs for $1,484.16; and after unsuccessful motion for new trial, defendants appeal.

There are ten assignments of error presented under four propositions. It is first contended that the trial court committed error in denying the petition of defendants for removal to the Federal court, filed September 22, 1945. The contention is that because plaintiffs in their petition alleged that they were damaged in some five particular items aggregating $3,850, said allegations controlled, as to the amount in controversy, over the prayer for only $3,000 in this action. Defendants assert that the prayer is no part of the petition, and cite a number of cases by this court. 12 O.S. 1941 §264 sets forth what a petition must contain. The third requirement is:

"A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; and, if interest thereon be claimed, the time from which interest is to be computed shall also be stated."

Thereunder the prayer for relief is necessarily a part of the petition. It is true that in some of the cases cited, such as Harmon v. Hines et al., 160 Okla. 120, 16 P. 2d 94, it is said that the prayer for relief is no part of the petition. The true rule, as originally stated, is:

"The plaintiffs' prayer for a judgment is only a matter of form and is no part of the statement of the cause of action." Fraley, Adm'r, et al. v. Wilkinson et al., 79 Okla. 21, 191 P. 156.

The rule as stated in Corpus Juris is:

"Under a statute providing that the petition must state the nature of the relief which plaintiff requests, it has been considered that the prayer is an essential part of plaintiff's petition and will determine the character of the order or decree which the court is called upon to render. . . . The prayer of relief does not constitute a part of the statement of the cause of action, . . ." 49 C. J., Pleading, sec. 188.

Therefore, considering the statutory provision that the petition must contain a demand for relief, and where recovery of money be demanded, the amount thereof shall be stated, it is not proper

222

to say that the prayer for relief is no part of the petition; but it may be and is proper to say that the prayer for relief does not constitute a part of the statement of the cause of action.

It is well settled that whether a case may be removed to a Federal court from a state court is a Federal question. Baltimore & Ohio R. R. Co. v. Koontz, 26 L. Ed. 643.

The right to remove a case to the Federal court where the diversity of citizenship, etc., exists, depends upon the amount in controversy as declared by the pleadings when the petition for removal is filed. Wourter v. Orr, 127 Fed. 2d 969.

The question here is whether, for the purpose of removal, the allegation in plaintiffs' petition as to the amount of alleged damages controls over the a-mount prayed for, in determining the amount in controversy. The rule in actions for damages appears to be:

"Where suit is brought upon a demand on which the law liquidates the damages for a default, the amount of the damages as liquidated by the law is the value of the matter in dispute, within the meaning of the statutes relating to the removal of causes from a state court to a Federal court, regardless of the amount named in plaintiff's declaration or petition. In other actions for damages, however, the amount for which the plaintiff demands judgment is to be regarded as the sum or value in dispute, unless it clearly appears that the amount named is merely colorable, and beyond the amount of a reasonable expectation of recovery, or unless the allegations of the complaint show affirmatively that plaintiff is entitled to recover a lesser sum only than that for which judgment is prayed for. . . ." 54 C.J., Removal of Causes, sec. 40, p. 228-229.

The rule as stated in American Jurisprudence is as follows:

"The words 'matter in controversy' as used in defining the jurisdictional amount refer to the claim presented on the record to the legal consideration of the court. It is generally the amount demanded by the plaintiff's pleading, although in some instances the amount set up in a counterclaim or cross bill has been taken into consideration in ascertaining the jurisdictional amount. . . . A prayer for damages in a sum less than the jurisdictional amount may defeat removal notwithstanding the plaintiff alleges damages in a sum exceeding the jurisdictional amount. The amount in dispute in the main controversy in the suit, rather than in some incidental matter, controls in determining the jurisdictional sum." 45 Am. Jur., Removal of Causes, sec. 27.

In Stark v. Port Blakely Mill Co., 44 Wash. 309, 87 P. 339, it was held:

"Where plaintiff's original complaint averred a cause of action for damages amounting to $2,040.50, but prayed judgment only for the sum of $1,982, the demand for judgment constituted the matter in dispute, for the purpose of determining whether the cause was removable to the Federal courts."

Therein it is noted that defendant mill company cited 1 Enc. Pl. & Pr. 712, to the effect that where the real amount in controversy is made to appear, it is the all-controlling criterion of jurisdiction. With reference thereto the court said:

"But an investigation of all of the authorities convinces us that a different rule applies in cases where the action is for damages."

In support of said statement, the court cited and quotes from certain authorities, i.e.:

"'In all actions sounding in damages, the plaintiff is limited by his demand therefor in his declaration or complaint, and can recover no more than the amount specified.' 5 Enc. Pl. & Pr. 712. 'The rule, then, is settled that the demand of the plaintiff in his declarations decides the sum in dispute.' Diesbrow v. Driggs, 16 How. Prac. (N.Y.) 346. 'The value of the matter in dispute, for the purposes of removal, is to be determined by reference to the amount claimed in the declaration, petition, or bill of complaint.' Dillon's Removal of Causes, §93.

See, also, Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; De-Camp v. Miller, 44 N. J. Law, 617."

Plaintiffs in their brief cite no authority directly in point on this particular question, but such research as we have been able to make discloses many decisions upholding the rule stated in Corpus Juris and American Jurisprudence, supra. Among these are Woods v. Massachusetts Prot. Ass'n, 34 Fed. 2d 501; Reliance Life Insurance Co. v. Capital Nat. Bank, 38 La. A. 349, 143 S.E. 924; Lesh v. Bailey, 49 Ind. A. 254, 95 N.E 341; Bacon v. Iowa Cent. Ry. Co., 157 Iowa, 493, 137 N.W. 101, affirmed in 59 L. Ed. 591. (However, the latter case is one where the Iowa statute limited the amount of recovery to the amount prayed for.) Shrank v. Chicago & Alton Railroad Co., 159 Mo. App. 299, 140 S.W. 319, Bancroft Drainage Dist. v. Chicago, St. P.M. & O. Ry. Co., 102 Neb. 455, 167 N. W. 731.

The above authorities and others are cited in support of the statement that:

"By praying judgment or decree for a sum less than the jurisdictional amount, in a suit the removability of which depends upon the amount in controversy, plaintiff can prevent the removal of the suit even though the facts would support a prayer for a larger recovery." 54 C.J. Removal of Causes, sec. 28.

Defendants cite and rely in part upon Lynch v. Yellow Cab Co. of Missouri, 12 Fed. Supp. 926, a case arising under the laws of the State of Missouri. It was there said that since it would seem that the Missouri authorities hold that the ad damnum averments of the petition constitute the matter in controversy, they control over the amount prayed for. That case appears to support the contention of defendants, but the overwhelming weight of authorities is to the contrary. We know of no rule or decision in this state which permits the plaintiff in an action for the recovery of money to recover a judgment in excess of the amount prayed for. In such cases the courts almost universally instruct the jury that in the event the jury finds for the plaintiff, it shall fix the amount of recovery in the sum not to exceed the amount prayed for.

The next contention is that the court erred in denying the second petition of defendants to remove the case to the United States District Court. The second petition for removal was filed during the course of the trial and was based upon the fact that plaintiff, Ernest S. Perkins, testified or stated that he was asking or claiming judgment for damages in the sum of $3,850.

Defendants, in support of their contention, quote from Great Northern Railway Co. v. Alexander, Administrator of Hall, 246 U. S. 276-282, 38 S. Ct. 237, as follows:

". . . whether . . . a case, nonremovable when commenced, shall afterwards become removable, depends not upon what the defendant may allege or prove, or what the court may, after hearing upon the merits, in invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses."

But counsel for defendants overlook that part of the decision in the Great Northern Railway Company case going directly to the question presented, where the court said:

"It is also settled that a case arising under the laws of the United States, nonremovable on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff, or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant."

No attempt was made by plaintiffs to amend their petition so as to pray for more than $3,000, so the pleadings remained the same throughout the trial.

There was no error in denying either petition for removal.

It is next contended that the trial court erred in striking the pleadings and judgment in the former action (case No. 19012 in the district court of Pottawatomie county) from the answer of defendants in the present action; that part of the record in case No. 19012 shows that plaintiffs were claiming damages to their crops and lands for the overflow thereof during the years 1941, 1942, caused by the alleged wrongful acts of defendants, the cause thereof being clearly abatable by the expenditure of labor or money. The present action is for damages arising from the alleged flooding of plaintiffs' land during the years 1944, 1945, alleged to have been caused by subsequent wrongful acts of defendants.

The cause of plaintiffs' damages, pleaded in the present action, is also clearly abatable by the expenditure of labor or money.

In City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867, it was held:

"When a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent."

In that case, after citing and quoting from a number of decisions, the court quoted with approval from City of Nashville v. Comar, 88 Tenn. 415, 12 S.W. 1027, the following:

" 'It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, where the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that, where the cause of the injury is one not presumed to continue, the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance.' "

It is well settled that where the cause of injury is abatable by expenditure of labor or money, future damages may not be awarded. Successive actions may be maintained for damages arising from the same cause.

However, in the present case, the cause of action is not only limited to the acts of defendants alleged to have been committed within two years next preceding the filing of the petition, and after the trial of the former action, but additional wrongful acts of defendants alleged to have been committed within said two years are alleged, in that plaintiffs alleged that within said two years defendants had erected a dike or levee on their right of way along the east side of the natural watercourse, so as to cause the waters to flow over and across plaintiffs' land on the south side of the railroad track and also to back up and overflow plaintiffs' land on the north side of the railroad.

Defendants cite and rely in part upon McKee v. Producers' & Refiners' Corp., 170 Okla. 559, 41 P. 2d 466. The rule there stated is:

"In a second action for damages from a continuing and abatable nuisance, the judgment in a former action for damages from the same nuisance is conclusive as to the liability or nonliability of defendant, unless it be shown that there has occurred in the alleged nuisance a material and substantial change affecting the result."

The allegation in plaintiffs' petition, and the evidence concerning the erection of the dike, after the trial in the former action, brings this case clearly within the exceptions there stated, in that thereby it is shown that there has occurred in the alleged nuisance a material and subsequent change affecting the result.

There is no error in striking the petition, answer and judgment in the former action from the answer of defendants in the present action.

Finally, it is contended that the court erred in refusing defendants' request-

ed instruction No. 2 and giving instruction No. 8. Requested instruction No. 2 was properly refused in that it would have told the jury that plaintiffs were not entitled to recover for the crop damages for more than three acres of their land north of the railroad. This is on the theory that in the former action plaintiffs had claimed damages for the destruction of eight acres of land on the north of the railroad, which eight acres were included in the land planted to corn in 1944 and the eleven acres of land planted to wheat in 1945.

We have held that the cause of the damage in both actions was abatable by the expenditure of labor or money and that plaintiffs were entitled to maintain successive actions for recovery and that the issues were not the same in both actions because of the additional wrongful acts of defendants in erecting the dike after the trial in the first action.

We find no error in giving instruction No. 8 by the court.

Affirmed.

WELCH, CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.