UNION OIL COMPANY OF CALIFORNIA, Plaintiff, Appellant, Cross–Appellee,

v.

Darrel D. HEINSOHN, an individual, and Kathy Heinsohn, an individual, Defendants, Third–Party–Plaintiffs, Appellees, Cross–Appellants,

v.

EXXON CORPORATION, a New Jersey corporation, Third–Party Defendant, Appellant, Cross–Appellee.

Nos. 92–6211, 92–6217, and 92–6240.

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1994.

L. Mark Walker (Val R. Miller, with him on the briefs), of Crowe & Dunlevy, P.C., Oklahoma City, OK, for appellant, cross-appellee Exxon Corp.

Gregory A. McKenzie, of McKenzie, Moffett & Sykora, Oklahoma City, OK, (Brian L. Peterson, of McKenzie, Moffett & Sykora, Oklahoma City, OK, and Mark A. Jones, Union Oil Co. of California, Houston, TX, with him on the briefs), for appellant, cross-appellee Union Oil Co. of California.

Bradley D. Brickell (R. Bruce Kerr and Christine R. Fritze, with him on the briefs), of Mahaffey & Gore, P.C., Oklahoma City, OK, for appellees, cross-appellants Heinsohn.

Before TACHA and SETH, Circuit Judges, and LUNGSTRUM, District Judge *

SETH, Circuit Judge.

These diversity proceedings began with an action brought by Union Oil Company for a declaratory judgment against Darrel D. Heinsohn and Kathy Heinsohn. It sought to determine whether Union Oil would be liable to the Heinsohns under the Oklahoma Surface Damages Act, Okla.Stat. tit. 52, §§ 318.2–.9 (1991), if it built and operated a sour gas processing plant in the NE/4 of Section 33 of a described township. The plant was to be built and was eventually built under the express authority of the provisions of an oil and gas lease obtained in 1967 from the surface and mineral owner of the NE/4 of

* Honorable John W. Lungstrum, United States District Judge for the District of Kansas, sitting by designation.

Section 33. The Heinsohns had thereafter (1983) acquired the surface of the NE/4 of Section 33 subject to lease. They do not challenge the right of Union to build the plant.

This suit, *as commenced* by Union, only concerned the matter of surface damages under the Oklahoma Act which would result from the sour gas treatment plant pursuant to the oil and gas lease.

A gas well known as the Bruner No. 1–33 had been drilled in the NE/4 of Section 33, Township 11 North, Range 25 West, Beckham County, Oklahoma in 1972. This producing well was drilled to a depth of 24,500 feet to the Hunton formation. The gas field was thereafter developed on a 640–acre spacing pattern. The gas produced contained a considerable quantity of hydrogen sulfide. It was thus necessary to process this sour gas to remove the hydrogen sulfide, which was poisonous, in order to market the gas. The well was posted as dangerous by reason of the hydrogen sulfide in the gas produced.

The Heinsohns bought the surface of the SE/4 of Section 33 in 1974 (the quarter section south of the quarter section on which the above well was located), subject to Union's lease. A gas processing plant had been built in 1975 by El Paso in the NE/4 at the No. 1–33 well site to remove the hydrogen sulfide and carbon dioxide from the gas produced by the Bruner 1–33 well of Union. This plant operated until 1982 and was removed in 1990. The 1–33 well was plugged in 1983.

In May of 1983 the Heinsohns bought the surface of the NE/4 of Section 33 subject to the lease and began to operate a dairy. At that time the 1–33 well had been plugged and the plant apparently was not operating. In the sections surrounding Section 33 there were several wells in the Hunton sour gas formation.

Union decided in 1988 to drill a well, the 2–33 well, in the NE/4, to replace the original Bruner 1–33 well, and negotiated with the Heinsohns as to what would be the surface damage for the drilling and operation of such a well. The amount of $15,000 was agreed upon and provision was made for surface damages if a new processing plant was built at the well site.

The 2–33 well was completed as a producer and it was necessary to process the gas and Union thereafter began construction of such a plant. The well site and the plant site occupy about five acres. Union obtained the required permits for the plant from the Oklahoma Air Quality Service of the Oklahoma Department of Health and review by the EPA. The authorization required a showing that the plant design used the best control technology.

Union and the Heinsohns could not agree on the amount of surface damages which would result from the plant's construction and operation. Thus before construction began on the plant Union filed this suit against the Heinsohns for a declaratory judgment as to whether the Surface Damages Act applied, and if so, what would be the damages thereafter. Construction was begun and the plant was completed. In response to the declaratory judgment action the Heinsohns filed a counterclaim against Union Oil Company, asserting that its gas processing plant in the NE/4 constituted a nuisance.

The Heinsohns also filed third party claims of nuisance against Exxon Corporation for its gas processing plant in Section 3, Township 10 North, Range 25 West (about 1.3 miles from the Heinsohn property), and against El Paso Natural Gas Company and Mesa Operating Partnership for their gas processing plants in nearby sections.

The causes which were tried were the Surface Damages Act cause against Union only, and the nuisance causes against Union and Exxon. The trial court bifurcated the proceedings to separate the surface damage cause against Union from the nuisance causes against Union and Exxon.

The third party nuisance claims against El Paso and Mesa directed to their two plants were both settled for a total of $100,000. This settlement permitted the continued operation of the two sour gas processing plants, with a release by the Heinsohns of any claims that the future operation of such plants would constitute a nuisance. The final nuisance judgment against Exxon and Union

as to their plants represented a reduction of the jury award by the amount of this settlement.

### The Surface Damages Act Of Oklahoma 52 Okla.Stat. § 318 (1982)

The Surface Damages Act cause against Union only was submitted to the jury. It decided that the market value of the Heinsohn farm would be reduced by the Union Oil Company plant in the amount of $100,700. The trial court's judgment for the Heinsohns against Union was entered together with attorney fees as "costs".

■ The record demonstrates that the Oklahoma Surface Damages Act was followed in the proof, instructions, and award. The decline in the fair market value of the land was shown. The Act allows for no award for personal injuries. *Turley v. Newbourne Oil Co.*, 904 F.2d 43 (10th Cir. 1990); *Dyco Petroleum Corp. v. Smith*, 771 P.2d 1006 (Okla.1989).

■ The trial court awarded attorney fees to the Heinsohns for the surface damage trial. This is challenged by Union on the basis that the Act has an express attorney fee provision which must be followed, and the trial court should not have applied the railroad condemnation doctrines instead.

The express fee provision in the Act should prevail and it does not permit the fees here ordered against Union because Union did not request a jury which is an express condition in the Act. *Andress v. Bowlby*, 773 P.2d 1265 (Okla.1989). An Oklahoma Supreme Court opinion must control rather than the court of appeals case of *TXO Production Corp. v. Stanton*, 847 P.2d 821 (Okla.App. 1992).

### The Nuisance Causes Of Action

The nuisance cause of action in the third party complaint by the Heinsohns against Exxon, and in the counterclaim against Union, presents several issues. The damages are asserted to have been caused by the gas processing plants. These damages were in the nature of personal injuries, not in the sense of any permanent impairment, or long-term pain and suffering resulting from the nuisances, but inconvenience, anxiety, and annoyance which were of intermittent duration and of variable intensity.

Mesa and El Paso, as mentioned, settled the nuisance claims against them with the Heinsohns for a total of $100,000. The nuisance causes continued against Exxon and Union. This settlement amount is however an issue in the claims against Union and Exxon because it was deducted by the court from the jury award against Union and Exxon.

In addition to the question raised by Exxon and Union as to whether nuisances were proven, a basic question as to Oklahoma law arises as to damages. This issue basically is whether the award of future damages of the kind here sought was here permitted by Oklahoma law since the nuisances were temporary, that is, abatable, and were not asserted to be damaging to real estate, but were personal only. *Briscoe v. Harper Oil Co.*, 702 P.2d 33 (Okla.1985), is an important case as to damages to land both permanent and temporary. The opinion does not decide the issue derived from permanent or temporary nuisances as here concerned.

### Was There Sufficient Evidence For The Nuisance Claims To Go To The Jury?

■ The Heinsohns' evidence was that they experienced the very unpleasant odor of hydrogen sulfide gas coming from the treatment plants which varied in intensity from time to time, and that this caused on occasion watery eyes and runny noses. It was unpleasant, but there was no competent medical evidence of any long-lasting personal injury. There was also testimony of fear and anxiety from possible breaks in the gas lines or accidents at the plants, and of personal inconvenience, discomfort, and annoyance. There were alarms occasionally sounded at the plants, and there were bright lights. It was accepted that gas with concentrated hydrogen sulfide can be poisonous and cause fatalities, but no such concentrations were shown to have existed or approached.

The evidence of Union and Exxon was that the plants were properly designed, and also

that they were properly operated and had the necessary devices for effective operation. Their evidence as to dangers was that a serious accident was an extremely remote possibility.

The basic position of Union and Exxon was that the plants were approved by the reviews by a state environmental agency in applications for permits, and permits had been granted in accordance with Oklahoma statutes. Thus the companies assert that the plants could not be nuisances because they were not unlawful, and no failure of duty to them was shown by the Heinsohns as required by Oklahoma law.

Oklahoma Statutes, title 50, § 1 (1988), defines a nuisance as:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

"Second. Offends decency; or

"Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or

"Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.

"R.L.1910, § 4250. Laws 1980, c. 189, § 1, eff. Oct. 1, 1980."

The leading Oklahoma case on the subject of complaints against entities with a permit or license probably is *Briscoe v. Harper Oil Co.*, 702 P.2d 33 (Okla.1985). This opinion in part states:

"The fact that a person or corporation has authority to do certain acts does not give the right to do such acts in a way constituting unnecessary interference with the rights of others. A license, permit or franchise to do a certain act cannot protect the licensee who abuses the privilege by erecting or maintaining a nuisance. The reasonableness or necessity of the acts complained of are for the jury to decide."

702 P.2d at 36. *See also Dobbs v. Durant,* 206 P.2d 180 (Okla.1949).

■ Licensing is not in itself enough to avoid liability. A duty to the Heinsohns was adequately established by the evidence under the statute and the cases. We are aware of and have considered the sequence of the leases, construction of the plants, purchase of the surface by the Heinsohns, and the building of their house, and that the Heinsohns were aware of the oil and gas leases.

We must conclude from an examination of the record that there was sufficient evidence introduced for submission to the jury of the question as to whether a nuisance existed.

The jury in response to Special Interrogatory No. 1 answered "yes" to the question:

"Do you find the activity of Union of which the Heinsohns complain to constitute a nuisance?"

The jury answered "yes" to the same question as to Exxon.

Thus, the jury determined that Union and Exxon omitted "to perform a duty," under the statute above quoted, to the Heinsohns.

### Were The Personal Injury Nuisances Temporary Or Permanent?

■ On submission pursuant to *Sinclair Oil & Gas Co. v. Allen,* 288 P. 981 (Okla. 1930), the jury here determined that the nuisances asserted to be causing personal injuries were temporary. In the Special Interrogatories, after the questions as to whether the "activity" constituted a nuisance, the jury in response to the following question:

"Do you find the activity of Exxon which you find to be a nuisance is temporary or permanent as defined by Instruction No. 31?"

Answered:

"We find the nuisance to be temporary."

The same response to the same question as to Union was made by the jury.

Instruction No. 31 gave a clear and accepted definition of temporary nuisance, that is, one which is abatable by the expenditure of time or money and of a permanent nuisance. The court defined "abatable" as that "which

is capable of being extinguished or stopped." *See Fleming v. Perkins,* 202 Okla. 217, 212 P.2d 122 (1949).

■ The determination by the jury should not be ignored nor overturned by the courts if properly submitted. *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439 (10th Cir.1988).

The trial court referred to all *future* damages as "remaining damages." The Interrogatories did not use the term "remaining damages", nor do the instructions define the term other than is quoted below. Instruction No. 23, after a reference to lost business, states in part:

"Future damages refer to damages, if any, that the Heinsohns will suffer from this date forward.

"As indicated above, the verdict form requires that past damages be separated into past lost business profits and all remaining past damages. Also, future damages are separated into future lost business profits and all remaining future damages."

The way the term "remaining damages" is used in Instruction No. 23, and in the Verdict Form, means and includes *all future* damages other than lost business profits, and regardless whether the nuisance is temporary or permanent.

The following table appears in the Verdict Form:

"If you find in favor of Darrel and Kathy Heinsohn and against either Exxon Corporation or Union or both, please fill in the amounts of damages below.

$ 0 for past lost business profits, from January 1991 to date, if any.

$ 0 for future lost business profits, if any,

$ 18,000.00 for remaining past damages from June 1990 to date, if any, and

$ 354,000.00 for remaining future damages, if any,

equalling the amount of *$372,000.00* for total damages."

The jury inserted the figures as shown above.

■ The jury was left without any discretion. It was to put all "future damages" whether the nuisance was temporary or permanent in the single space provided. All future damages were to be there except loss of business profits. There was no other category. The determination by the jury that the nuisances were temporary rather than permanent was thus given no significance or consideration whatever by the trial court despite the perfectly good description of both kinds of nuisances in Instruction No. 31, as mentioned.

The result of use of the Verdict Form and the instructions described above thus was to ignore the difference as to future and past damages of the types here concerned recoverable in Oklahoma for temporary or permanent nuisances as hereinafter described.

The trial court in Instruction No. 22 listed recoverable damages if the Heinsohns should prevail. These include:

1. Lost business profits, past and future;

2. Fear or anxiety experienced by a normal person;

3. Personal inconvenience, discomfort, and annoyance.

The above were not tabulated in the instruction but were the terms used. These were followed by a statement that they were not to be separately considered and: "Rather, these factors, or any other factor, may be taken into consideration in determining the damages." This statement must be taken as referring to damages of the type listed.

The nuisances were abatable, as the jury found; thus, the duration of the personal impact was unknown. There was no medical evidence of any lasting effects.

The Heinsohns received a Surface Damages Act award from Union as considered above which was measured by the impact of the plant on the reasonable market value of the surface. That element of damages from oil and gas development had been placed under the Surface Damages Act by the legislature. The Act does not cover personal damages such as are concerned in the nuisance causes of action. *Darling v. Quail Creek Petroleum Management Corp.,* 778

P.2d 943 (Okla.App.1989); *Dyco Petroleum Corp. v. Smith,* 771 P.2d 1006 (Okla.1989).

As a separate matter, the trial court appears, as to Exxon, to have treated its nuisance as temporary for limitations purposes but permanent for damages.

### Temporary Nuisances And Future Damages In Oklahoma

■ We review de novo the conclusions reached by the trial court as to what state law doctrines are applicable in diversity cases. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

Again, the damages sought and allowable under Instruction 22 (as described above) were for personal inconvenience, discomfort, annoyance, fear, and anxiety. These, by the Verdict Form (above), could only be put in a "past" category or a "remaining future damages" category. The jury inserted in the "future" category the amount of $354,000, and in the "past" $18,000.

The jury thus determined the future personal damages for temporary nuisances and these were awarded by the court. The Oklahoma case law holds that such future damages should not be awarded.

The Supreme Court of Oklahoma in the opinion in *Holdenville v. Kiser,* 156 P.2d 363, 364 (Okla.1945), stated in its syllabus:

"4. For a temporary nuisance, recovery is limited to the damages sustained up to the time of the filing of the action, and prospective damages may not be allowed, but successive suits may be maintained."

Many cases were cited in the opinion to support the above headnote. *Holdenville* concerned the discharge of sewage into a stream. The court stated that the recovery in the trial court was for the discomfort and annoyance of the plaintiffs. There had been a previous suit and recovery by the plaintiffs. The nuisance was temporary. The court also stated as to damages:

"The trial court properly limited the plaintiff to recovery of damages sustained during the two years next preceding the filing of the petition."

156 P.2d at 365 (citations omitted). *See also Oklahoma City v. Page,* 153 Okla. 285, 6 P.2d 1033 (1931) (the discharge of sewage into a stream with impact on the use of home and also on value of the land for development and farming). The same holding appears in *Oklahoma City v. Eylar,* 177 Okla. 616, 61 P.2d 649 (1936) (where again the sewage discharged into a stream was unpleasant and decreased enjoyment of a home). The doctrine apparently was first expressed in *Ardmore v. Orr,* 35 Okla. 305, 129 P. 867 (1913). Thus the Oklahoma rule as to the future damages as those here concerned has been in effect since at least 1913. *See also Fleming v. Perkins,* 202 Okla. 217, 212 P.2d 122 (1949) (where a dike was built causing the flooding of plaintiffs' land and crops). The court there held that successive actions could be brought for an abatable nuisance but no future damages could be recovered for such nuisances.

It appears that the trial court may have relied on *Davis Oil Co. v. Cloud,* 766 P.2d 1347 (Okla.1986), to support its position that future damages were recoverable for a temporary nuisance. However, the *Davis* case did not concern a nuisance action, but was instead a claim under the Oklahoma Surface Damages Act. The opinion held that personal inconvenience damages could only be recovered if they represented an impact on land values. This was followed by *Dyco Petroleum Corp. v. Smith,* 771 P.2d 1006 (Okla. 1989). *Davis* is not applicable to the case before us to suggest any judicial balancing of mineral and agricultural development or pursuits.

The Heinsohns urge that the application of Restatement (Second) of Torts § 930 (1979) would lead to a different result, but it is basically concerned with changes in the value of real estate with which we are not here concerned. Section 929 refers to damages of the type here concerned and which restrict such damages to the past.

The Heinsohns received an award for surface damages to the real estate in their cause of action on the Act against Union. Also the jury awarded compensation for *past* damages of the type claimed on the nuisance causes as was permitted.

We find no merit to the argument of the Heinsohns that any claim as to punitive damages should have been submitted to the jury. There was no evidence to support such a submission. Nor was there evidence to support a finding that the Scot Unit was a necessary protective device.

The judgment on the nuisance causes of action must be REVERSED insofar as it included future damages for abatable nuisances, and the case is REMANDED.

The judgment against Union Oil Company in the cause of action under the Oklahoma Surface Damages Act is AFFIRMED except as to the allowance of attorney fees which is REVERSED and the case REMANDED as to such fees.

IT IS SO ORDERED.